■ CENTRAL SCHOOL DISTRICT NO. 3 OF THE TOWN OF CORTLANDT, Respondent, v TOWN OF CORTLANDT et al., Appellants.—In this action to recover interest on certain tax moneys which had been held in escrow by the defendant Town of Cortlandt for the benefit of plaintiff school district, defendants appeal from a judgment of the Supreme Court, Westchester County, dated July 30, 1974 and made after a nonjury trial, which judgment is alleged to have granted relief to plaintiff upon its complaint, and which expressly dismissed defendants' counterclaim. The judgment recites that the trial court's written decision is in favor of plaintiff and against defendants in the sum of $101,092.91 with interest thereon from January 14, 1974, together with costs and disbursements taxed by the clerk in the sum of $266; however, the judgment does not contain a decretal paragraph to this effect. Judgment modified, on the law and in the exercise of discretion, by adding thereto a provision that plaintiff school district is directed to hold the interest on the Valeria school tax moneys in trust for the benefit of the taxpayers of the plaintiff school district and to apply these moneys to the reduction of school taxes during the next fiscal year. As so modified, judgment affirmed, without costs. In 1960 the Town Board of the defendant Town of Cortlandt placed the real property of Valeria Home, Inc., a formerly tax exempt charitable institution located within the town, on the tax rolls at an assessment of $1,750,000. Valeria instituted a proceeding under CPLR article 78 against the town to compel the restoration of its tax exempt status and challenging the assessment. The boundaries of the plaintiff school district are not coterminous with those of the town but the portion of the school district that lies within the town includes the Valeria property. Pursuant to the Westchester County Administrative Code the

town collects the school taxes from those taxpayers of the school district who reside within the town, and pays the same to the school district (Westchester County Administrative Code, §§ 540, 541, 549, subd [b]; L 1948, ch 852, as amd). During the pendency of the article 78 proceeding brought by Valeria, the town requested a special act of the Legislature permitting the town to exclude the assessed valuation of the Valeria property in computing future tax rates and to enable the town to levy school taxes against the Valeria property, to collect such taxes and to hold them in escrow without paying them to the school district, pending the outcome of the litigation. Such an act was passed but was vetoed by the Governor for technical deficiencies. Another bill was passed by the Legislature in 1962 (Intr No. 5071, Print No. 5755) and on this occasion the Governor considered the merits and vetoed the second bill, stating in relevant part: "I find that if the assessed valuation of the property in question is excluded in computing tax rates during the period of the litigation, an immediate increase in the tax rate on every other piece of property in the [district] would be required." While these efforts to procure legislative approval were in progress the town proceeded to put the escrow scheme into effect and persisted in continuing with its use despite the express disapproval of the Governor in his veto message. In order to appreciate the effect of the procedure adopted by the town and acquiesced in by the school district, it is necessary to examine the method by which operating revenues are raised by the school district. The school district establishes its budget and has it approved by the voters (Education Law, §§ 1716, 2022). Since the school district is comprised of portions of both the Town of Cortlandt and the City of Peekskill, each of these governmental subdivisions certifies the total assessed valuation of its portion of the school district and forwards this information to the school district. The school district then applies the appropriate county equalization rate to both those assessed valuations, and a total equalized assessed valuation is obtained for the entire school district. The percentage which the town equalized valuation bears to the total equalized valuation of the school district is computed, as is the percentage for the city portion, and those percentages are then applied to the total amount of the approved budget in order to determine the amount of taxes to be raised in each of the two portions of the school district. The school district then certifies to the town supervisor the amount of the moneys to be raised by the town (Westchester County Administrative Code, §§ 540, 541). The town computes the tax rate, applies it to the assessment on each piece of taxable real estate, and the town supervisor delivers his warrant for the collection of these taxes to the town receiver of taxes. After the receiver of taxes collects the tax, the town supervisor must then pay the full amount due to the school district (Westchester County Administrative Code, § 549, subd [c]; § 555). In order to effectuate its desire to hold the Valeria taxes in escrow, the town importuned the school district to change the method by which the total equalized assessed valuation of all the property within the school district was computed. At the town's request, the school district excluded the assessed valuation of the Valeria property before applying the appropriate equalization rate. This resulted, as the Governor's veto message foretold it would, in an improperly high tax rate for all the taxpayers in the school district and ensured that the full sum legally required to be paid to the school district would be raised from taxpayers other than Valeria. Eventually, the determination of the town board in placing Valeria on the tax rolls was sustained *(Matter of Valeria Home v Cook,* 28 AD2d 893, affd 22 NY2d 388). The town thereupon paid the principal sum of the school taxes

collected from Valeria to the school district. The town and the school district disagreed as to which of them was entitled to the interest on the deposited school tax money. The school district commenced this action to recover the interest, alleging the existence of an agreement between itself and the town whereby the latter had promised to pay the interest as well as the principal of the escrow account. The opinion of the trial court makes no finding on this issue, but we now hold that the school district failed to prove the existence of such an express agreement. The Trial Justice held that the defendant town would be unjustly enriched if it were permitted to retain the interest moneys and therefore he awarded them to the school district. It is our opinion that an unjust enrichment would result from the retention of the interest in question by either the defendant town or the school district. At the trial the treasurer of the school district conceded that the full amount of the taxes for the years in question was paid to the school district by the town. The payment of the escrow principal was therefore a windfall to the school district. Since the school district has already received more tax moneys than it certified were necessary to meet its budget, it is not entitled either legally or equitably to the interest in question. By the same token, the town acts merely as the agent of the school district for the collection of school taxes. It never had any legal or equitable right to retain the principal and thus it has no right to the interest. In order to create the escrow surplus upon which the interest was earned, all the school district taxpayers were unlawfully overtaxed. Equity requires us to declare a constructive trust of the interest to be held by the school district for the benefit of all the school district taxpayers (61 NY Jur, Trusts, §§ 140, 143). It appears that the Statute of Limitations has run on taxpayer applications to recover these illegally levied taxes (see 23 Opns St Comp, p 604, opn 67-677) and, in any event, the facts of this case do not seem to fall within the refund provisions of section 556 of the Real Property Tax Law. At this late date, when many of the original taxpayers must have died or moved from the school district, it is our opinion that substantial justice can only be effected by requiring the school district to apply the interest moneys to the reduction of school taxes for the forthcoming tax year. We note in passing that the trial court was entirely correct in dismissing the counterclaim interposed by the town (25 Opns St Comp, p 359, opn 69-887). Martuscello, Acting P. J., Latham, Cohalan, Christ and Munder, JJ., concur.